**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

Case No. 15-cv-24305-GAYLES

**DALE L. PICARDAT, JR.,**
        **Plaintiff,**

v.

**CITY OF MIAMI, et al.,**
        **Defendants.**
_____/

**ORDER**

      **THIS CAUSE** comes before the Court on the Motion for Final Summary Judgment [ECF No. 76] filed by Defendants City of Miami (the "City") and three City police officers: Tashara Alleyne, John Askew, and Daniel Mogro (collectively, the "Officers"). In this action, Plaintiff Dale L. Picardat, Jr., who proceeds in this action *pro se*, brings claims against the Defendants[1] alleging unreasonable seizure, false arrest, excessive force, failure to intervene, unreasonable vehicle search and seizure, and failure to train, all in violation of 42 U.S.C. § 1983, arising from a traffic stop and subsequent arrest that took place on October 27, 2013. The Court has reviewed the parties' briefs, the record in this case, and the applicable law and is otherwise fully advised in the premises.[2] For the reasons that follow, the Defendants' motion shall be granted.

**I.     LEGAL STANDARD**

      Summary judgment, pursuant to Federal Rule of Civil Procedure 56(a), "is appropriate

---

[1] While the Complaint also names as a Defendant an individual named Robin Sparks, no summons was ever issued in the name of that Defendant and she was never served. Given that the Complaint was filed over sixteen months ago, any claims against this Defendant are dismissed for failure to serve as required by Federal Rule of Civil Procedure 4(m).

[2] The Court does not consider Picardat's "Response to Defendant's Reply to Plaintiff's Response to Motion for Final Summary Judgment" [ECF No. 87], because neither the Federal Rules of Civil Procedure nor this Court's Local Rules authorizes the filing of sur-replies. *See* S.D. Fla. L. R. 7.1(c) (authorizing the filing of a motion, response, and reply, but providing: "No further or additional memoranda of law shall be filed without prior leave of Court").

only if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Tolan v. Cotton*, 572 U.S. —, —, 134 S. Ct. 1861, 1866 (2014) (per curiam) (quoting Fed. R. Civ. P. 56(a)) (internal quotation marks omitted); *see also Alabama v. North Carolina*, 560 U.S. 330, 344 (2010). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no ***genuine*** issue of ***material*** fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

An issue is "genuine" when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the nonmoving party in light of his burden of proof. *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014). And a fact is "material" if, "under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004) (citations and internal quotation marks omitted). "Where the material facts are undisputed and all that remains are questions of law, summary judgment may be granted." *Eternal Word Television Network, Inc. v. Sec'y of U.S. Dep't of Health & Human Servs.*, 818 F.3d 1122, 1138 (11th Cir. 2016).

The Court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *SEC v. Monterosso*, 756 F.3d 1326, 1333 (11th Cir. 2014). However, to prevail on a motion for summary judgment, "the nonmoving party must offer more than a mere scintilla of evidence for its position; indeed, the nonmoving party must make a showing sufficient to permit the jury to reasonably find on its behalf." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015). Although *pro se* filings must be liberally construed, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), "a *pro se* litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a fact material to his case in order to avert summary judgment," *Brown v. Crawford*, 906 F.2d

667, 670 (11th Cir. 1990).

Before proceeding further, the Court instructs that it "places great emphasis upon, and implores the parties to be mindful of, the fact that local rules have 'the force of law.'" *State Farm Mut. Auto. Ins. Co. v. B&A Diagnostic, Inc.*, 145 F. Supp. 3d 1154, 1158 (S.D. Fla. 2015) (quoting *Hollingsworth v. Perry*, 558 U.S. 183, 191 (2010)). Southern District of Florida Local Rule 56.1 requires that "[a] motion for summary judgment and the opposition thereto shall be accompanied by a statement of material facts as to which it is contended that there does not exist a genuine issue to be tried or there does exist a genuine issue to be tried, respectively," S.D. Fla. L.R. 56.1(a). Both the statement and the opposition shall, *inter alia*, "[b]e supported by specific references to pleadings, depositions, answers to interrogatories, admissions, and affidavits on file with the Court." *Id.* R. 56.1(a)(2). Local Rule 56.1(b), which governs the effect of a nonmovant's failure to controvert a movant's statement of undisputed facts, provides: "All material facts set forth in the movant's statement filed and supported as required above **will be deemed admitted** unless controverted by the opposing party's statement, provided that the Court finds that the movant's statement is supported by evidence in the record." *Id.* R. 56.1(b) (emphasis added). This rule "serves a vital purpose in 'help[ing] the court identify and organize the issues in the case.'" *B&A Diagnostic*, 145 F. Supp. 3d at 1158 (quoting *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009)). "It also preserves scarce judicial resources by preventing a court from 'having to scour the record and perform time-intensive fact searching.'" *Id.* (quoting *Joseph v. Napolitano*, 839 F. Supp. 2d 1324, 1329 (S.D. Fla. 2012)).

Given the purpose that these rules serve, "litigants ignore them at their peril." *Caban Hernandez v. Philip Morris USA, Inc.*, 486 F.3d 1, 7 (1st Cir. 2007). Here, the Defendants filed a Statement of Undisputed Material Facts in support of their motion for summary judgment. *See*

3

Defs.' Mot. at 2-6,[3] which the Court finds is supported as required and substantially complies with all requirements of Local Rule 56.1. And while Picardat did file a response to this statement in conjunction with the filing of his opposition, *see* Pl.'s Opp'n at 1-11,[4] each of his purported refutations (and all but one of his purported affirmative disputed material facts) rely on (1) allegations from his Complaint,[5] *see* Pl.'s Statement ¶¶ 1, 8-10, 13-15, 18-19, 21, 27, 34, 50, 76; (2) documents that are so poorly digitized and copied as to be practically illegible, *see id.* ¶¶ 12, 18, 20-21, 25, 27, 29, 31-34, 41-43, 45-46, 48-49, 78; or (3) nothing from the record whatsoever, *see id.* ¶¶ 2-6, 11-12, 16-17, 22-24, 26, 28, 30, 35-38, 44, 51-72, 74.[6] He has failed to properly controvert the Defendants' Statement and, therefore, pursuant to Local Rule 56.1(b), all facts contained within that Statement are hereby deemed admitted.

Picardat's *pro se* status does not alter this determination. "[A]lthough [courts] are to give liberal construction to the pleadings of *pro se* litigants," those litigants are "nevertheless . . . required . . . to conform to all procedural rules." *Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007) (citation and internal quotation marks omitted); *see also Smith v. Mercer*, 572 F. App'x 676, 678 (11th Cir. 2014) (per curiam) (affirming a district court's decision to deem admitted the moving party's facts under that district's analog to S.D. Fla. Local Rule 56.1(b) where the *pro se* nonmoving party's response failed to comply with that district's analog to S.D. Fla. Local Rule

---

[3] The Defendants' statement of undisputed material facts is incorporated within their memorandum [ECF No. 76]. For ease of reference, the Court will hereinafter refer to the statement as a standalone document ("Defs.' Statement.").

[4] Picardat's response to the Defendants' statement of undisputed material facts, along with his own statement of disputed material facts, is incorporated within his opposition memorandum [ECF No. 82]. For ease of reference, the Court will hereinafter refer to the statement as a standalone document ("Pl.'s Statement").

[5] At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presum[e] that general allegations embrace those specific facts that are necessary to support the claim. In response to a summary judgment motion, however, the plaintiff can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true.
*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (citations and internal quotation marks omitted).

[6] With one exception—whether headphones were impounded after Picardat's car was towed following his being taken into custody. Pl.'s Statement ¶ 77. Other factual assertions by Picardat include restatements of facts first advanced by the Defendants. *See id.* ¶¶ 39-40, 73, 75.

4

56.1(a)). Because Picardat "has failed to comply with Local Rule 56.1—the only permissible way for him to establish a genuine issue of material fact at [this] stage—the [C]ourt has before it the functional analog of an unopposed motion for summary judgment." *Mann*, 588 F.3d at 1303; *see also B&A Diagnostic*, 145 F. Supp. 3d at 1158 ("Although a failure to comply with the local rules can often result in harsh, if not fatal, outcomes for a party, such results are 'not by calculated choice of t[he] Court.'" (quoting *Gossard v. JP Morgan Chase & Co.*, 612 F. Supp. 2d 1242, 1246 (S.D. Fla. 2009))).

That said, the Court "cannot base the entry of summary judgment on the mere fact that the motion was unopposed," *United States v. 5800 S.W. 74th Ave.*, 363 F.3d 1099, 1101 (11th Cir. 2004), because "[e]ven in an unopposed motion [for summary judgment], . . . 'the movant is not absolve[d] . . . of the burden of showing that it is entitled to a judgment as a matter of law,'" and the Court "must still review the movant's citations to the record to determine if there is, indeed, no genuine issue of material fact," *Mann*, 588 F.3d at 1303 (quoting *Reese v. Herbert*, 527 F.3d 1253, 1268 (11th Cir. 2008)). To that end, the Court must "consider the merits of the motion" and "review all of the evidentiary materials submitted in support of the motion," *5800 S.W. 74th Ave.*, 363 F.3d at 1101-02, in order to "satisfy itself that the [movant's] burden has been satisfactorily discharged," *Reese*, 527 F.3d at 1268.

## II.   BACKGROUND

### A.   *Factual Background*

With the above discussion in mind, the following facts are undisputed and supported by the record before this Court.

On October 27, 2013, at approximately 1:00 a.m., Officer Tashara Alleyne was traveling westbound on N.W. 40th Street within the City of Miami in Miami-Dade County, Florida. Defs.' Statement ¶ 1. Officer Alleyne was in her full police uniform with a badge and service weapon

5

and drove a fully marked City of Miami police car. *Id.* ¶ 2. The officer observed a vehicle stopped on N.W. 6th Avenue facing eastbound with its lights off. *Id.* ¶ 3. As she got closer to the vehicle, she noticed the driver—Picardat—wearing a large pair of black headphones. *Id.* ¶ 4. The officer made a U-turn and began traveling eastbound behind Picardat on N.W. 40th Street. *Id.* ¶ 5. Picardat made a left turn on N.W. 5th Avenue and began traveling north towards N.W. 41st Street. *Id.* Officer Alleyne conducted a traffic stop by activating her overhead police lights, and Picardat pulled his vehicle over to the right side of the roadway on N.W. 43rd Street and N.W. 5th Avenue. *Id.* ¶ 6. Picardat was driving a 2000 blue four-door Mercury Grand Marquis bearing Michigan license plate number BNX7876. *Id.* ¶ 7.

After advising of the traffic stop over the police radio, Officer Alleyne ordered Picardat, over her vehicle's public address system, to step out of his vehicle with his driver's license and vehicle registration in hand. *Id.* ¶ 8. Picardat did not comply with the officer's request and began moving excessively inside his vehicle. *Id.* ¶ 9. Officer Alleyne then requested a back-up officer to respond to the scene. *Id.* Officer Alleyne repeated her request for Picardat to step out of his vehicle over her vehicle's P.A. system, but Picardat ignored that, as well. *Id.* ¶ 10. Officer Alleyne remained inside her vehicle while she waited for a back-up officer to arrive. *Id.*

Moments later, Picardat placed his vehicle in drive and began traveling westbound on N.W. 43rd Street approaching N.W. 6th Avenue. *Id.* ¶ 11. Officer Alleyne advised over the police radio that the vehicle was attempting to flee and then followed it. *Id.* She did not use her overhead lights and sirens because she was complying with the City of Miami Police Chase Policy which prohibits such conduct while pursuing a vehicle involved in a mere traffic stop. *Id.*

Picardat came to an abrupt stop in the middle of the street, mid-block, on N.W. 6th Avenue between N.W. 43rd and N.W. 44th Streets. *Id.* ¶ 12. He exited his vehicle, locked his driver's side door, and looked in Officer Alleyne's direction. *Id.* ¶ 13. Officer Alleyne parked behind Picardat's

6

vehicle and exited her car with her firearm drawn. *Id.* Picardat walked around the back of his vehicle and began walking south on the sidewalk toward Officer Alleyne. *Id.* ¶ 14. Officer Alleyne gave Picardat loud verbal commands ("Stop!" and "Get on the ground!"), but Picardat refused to stop and continued advancing toward her. *Id.* ¶ 15.

At that time, Officer John Askew arrived at the scene and also gave Picardat loud verbal commands to stop and get down on the ground. *Id.* ¶ 16. Again, Picardat refused to stop and continued advancing towards Officer Alleyne. *Id.* Officer Askew was in his full police uniform with a badge and service weapon and drove a fully marked City of Miami police car. *Id.* ¶ 17. Officer Askew then holstered his firearm and redirected Picardat to the ground. *Id.* ¶ 18. While Officer Askew attempted to bring Picardat to the ground, Picardat grabbed hold of an adjacent chain link fence and refused to let go of it and place his hands behind his back. *Id.* ¶ 19. Officer Alleyne assisted Officer Askew in placing Picardat's left arm in handcuffs behind his back, but Picardat kept his right arm underneath his body, refusing to place it behind his back. *Id.* ¶ 20. While Picardat was on the ground he began rubbing his face against the cement sidewalk. *Id.* ¶ 21. Officers Alleyne and Askew struggled to place Picardat's right arm behind his back but eventually managed to do so. *Id.* ¶ 22. At no time did Officer Askew hit Picardat in the back of the head, slam his face into the concrete sidewalk, or otherwise strike him. *Id.* ¶ 23. Neither Officer Alleyne nor Officer Askew used more force than necessary to place Picardat under arrest. *Id.* ¶ 24.

Picardat was charged with Fleeing and Eluding a Police Officer, Failure to Obey a Lawful Order, and Resisting an Officer Without Violence. *Id.* ¶ 25. He was also issued traffic citations for Wearing Headsets, Fleeing and Eluding a Police Officer, and for No Proof of Insurance. *Id.* Although Officer Alleyne had probable cause to charge Picardat with other traffic infractions, she used her discretion not to do so. *Id.* ¶ 26. After being advised on the charges, Picardat spontaneously stated, "I did not hear you, I had my headphones on." *Id.* ¶ 27. Picardat also stated that he sued the

7

City of Miami Beach for a similar incident and won a $70,000 judgment. *Id.* ¶ 28.

After lifting Picardat off the ground, Officer Alleyne noticed injuries to his face and requested fire rescue. *Id.* ¶ 29. Picardat was treated at the scene and then transported to Jackson Memorial Hospital. *Id.* ¶ 30. While at the hospital, Picardat spontaneously stated that his case would be "nolle prossed" and that he was able to purchase properties with the money he won from the City of Miami Beach. *Id.* He further stated that he intended to sue the City of Miami for this incident. *Id.* After arriving at Jackson Memorial Hospital's Emergency Department, per hospital and City of Miami Police Department policy, Picardat was secured to his bed rail for his safety, the public's safety, and to ensure that he received appropriate medical care. *Id.* ¶ 31. At no time was Picardat denied food, water, or access to the bathroom and medical treatment. *Id.* ¶ 32. At no time did Officer Alleyne prevent any medical personnel from tending to Picardat. *Id.* ¶ 33.

Picardat's vehicle was towed from the scene because it was obstructing the roadway and because he was arrested. *Id.* ¶ 34. Prior to towing the vehicle, an inventory search was conducted to protect any property of value inside the vehicle and to prevent false claims of loss or damage from being made against the City, the City of Miami Police Department, and City of Miami police officers. *Id.* ¶ 35. An inventory search of the vehicle revealed several items that may have held value, which were documented and held by the City of Miami Police Department. *Id.* ¶¶ 36-37.

At all times material hereto, Officer Alleyne, Officer Askew, and Officer Daniel Mogro[7] were employed by the City of Miami Police Department, acted in the course and scope of said

---

[7] The Defendants' Statement of Undisputed Facts contains no other factual statements regarding Officer Mogro or his involvement in the incidents at issue in this case. According to his affidavit (which Picardat does not refute), Officer Mogro was on duty when he responded to Officer Alleyne's police radio call regarding the fleeing vehicle. Mogro Aff. [ECF No. 76-3] ¶ 4. When he arrived at the scene, he noticed Picardat sitting on the sidewalk with his hands cuffed behind his back and acting in a belligerent and uncooperative manner towards Officers Alleyne and Askew. *Id.* ¶¶ 6-7. Shortly after his arrival, the vehicle Picardat drove was towed from the scene and, while Officer Mogro does not recall searching the vehicle prior to it being towed, he stated that vehicles are typically towed under these circumstances (and an inventory search is conducted prior to towing). *Id.* ¶¶ 9-11. Officers Mogro and Alleyne are both listed as an Impounding Officer on the City of Miami Police Department Vehicle Storage Receipt. [ECF No. 76-6].

employment, and engaged in a discretionary duty. *Id.* ¶ 38.

### B. *Procedural History*

Picardat filed his Complaint in this action on November 19, 2015. He alleges the following claims: unreasonable seizure against Officer Alleyne (Count II); false arrest against Officer Alleyne (Count III); excessive force against Officer Askew (Count IV); failure to intervene against Officer Alleyne (Count V); unreasonable vehicle search and seizure against Officers Alleyne and Mogro (Count VI); excessive force against Officer Alleyne (Count VII); and municipal liability against the City (Count VIII).[8]

## III. DISCUSSION

### A. *Qualified Immunity*

"Qualified immunity shields government officials from liability for civil damages for torts committed while performing discretionary duties unless their conduct violates a clearly established statutory or constitutional right." *Stephens v. DeGiovanni*, — F.3d —, —, 2017 WL 1174381, at *7 (11th Cir. Mar. 30, 2017) (quoting *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008)). "To receive qualified immunity, the officer must first show that he acted within his discretionary authority." *Lewis v. City of West Palm Beach*, 561 F.3d 1288, 1291 (11th Cir. 2009). It is undisputed that Officers Alleyne, Askew, and Mogro were each acting within his or her discretionary authority at the time of Picardat's arrest.

With discretionary authority established, "the burden then shifts to the plaintiff to show that qualified immunity should not apply." *Id.* To make that determination, the Court undergoes a two-pronged inquiry. First, the Court asks "whether the facts, [t]aken in the light most favorable to the party asserting the injury, . . . show [that] the officer's conduct violated a [federal] right." *Salvato*

---

[8] The Court dismissed Count I of the Complaint ("General Allegations") as to all four Defendants in four separate Orders. [ECF Nos. 27, 29, 55 & 63].

*v. Miley*, 790 F.3d 1286, 1292 (11th Cir. 2015) (first and third alterations in original) (quoting *Tolan*, 134 S. Ct. at 1865). Second, the Court asks "whether the right in question was 'clearly established' at the time of the violation." *Id.* (quoting *Tolan*, 135 S. Ct. at 1866). The Court has discretion to decide which question to address first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

"'[C]learly established law' should not be defined 'at a high level of generality,'" *White v. Pauly*, 580 U.S. —, —, 137 S. Ct. 548, 552 (2017) (per curiam) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)), and "must be 'particularized' to the facts of the case," *id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). In other words, to satisfy the "clearly established" prong, the plaintiff must identify precedent (of the Supreme Court of the United States, the U.S. Court of Appeals for the Eleventh Circuit, or the Florida Supreme Court, *see McClish v. Nugent*, 483 F.3d 1231, 1237 (11th Cir. 2007)) where an officer acting under similar circumstances as the officer in the plaintiff's case was held to have violated the Fourth Amendment. *See White*, 137 S. Ct. at 552; *see also id.* ("Of course, general statements of the law are not inherently incapable of giving fair and clear warning to officers, but in light of the pre-existing law the unlawfulness must be apparent." (citations and internal quotation marks omitted)); *al-Kidd*, 563 U.S. at 741 ("'The contours of the right must be sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.' We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." (quoting *Anderson*, 483 U.S. at 640) (alterations removed)). Alternatively, in excessive force cases, a right can be clearly established if the officer's conduct "lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the officer, notwithstanding the lack of fact-specific case law." *Vinyard v. Wilson*, 311 F.3d 1350, 1355 (11th Cir. 2002).

Given that the Defendants' motion is functionally unopposed, and based on the Defendants'

facts which have been deemed admitted by the Court, the Court finds that Picardat has necessarily failed to meet his burden to show clearly established law that (1) a police officer who arrests a plaintiff for fleeing and attempting to elude the officer violates the Fourth Amendment; (2) a police officer who uses a measure of force equivalent to that used here to effect the arrest of a plaintiff who has fled from the officer, attempted to elude the officer, or actively resisted the officer's commands violates the Fourth Amendment; or (3) a police officer who conducts an inventory search of a plaintiff's vehicle incident to arrest violates the Fourth Amendment. As to the excessive force claims against Officers Alleyne and Askew, Picardat has failed to establish that their conduct was so outrageous that it clearly goes "so far beyond the hazy border between excessive and acceptable force that [they] had to know [they were] violating the Constitution even without case law on point." *Smith v. Mattox*, 127 F.3d 1416, 1419 (11th Cir. 1997); *see also Fils v. City of Aventura*, 647 F.3d 1272, 1291-92 (11th Cir. 2011). As a result, the Court need not determine whether the Officers' conduct violated a federal right, because a plaintiff must satisfy both prongs of the analysis to show that a defendant is not entitled to qualified immunity. Accordingly, the Court finds that the Officers are each entitled to qualified immunity and are thus also entitled to summary judgment in their favor as to Counts II, III, IV, V, VI, and VII.

    **B.**    *Municipal Liability*

A municipality's liability under Section 1983 may not be based on the doctrine of respondeat superior. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). The municipality is "liable under section 1983 only for acts for which [the municipality] is actually responsible," *Marsh v. Butler County*, 268 F.3d 1014, 1027 (11th Cir. 2001) (en banc), *abrogated on other grounds by Twombly v. Iqbal*, 550 U.S. 544 (2007), *i.e.*, only when the municipality's "official policy" causes a constitutional violation, *Monell*, 436 U.S. at 694. Thus, to establish liability for a Section 1983 claim against a municipality, the plaintiff must "identify a municipal 'policy' or 'custom' that caused

11

[his] injury." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998) (citation and internal quotation marks omitted). Picardat here, therefore, has two methods through which he could establish the City's liability: "identify either (1) an officially promulgated [City] policy or (2) an unofficial custom or practice of the [City] shown through the repeated acts of a final policy maker for the [City]." *Grech v. Clayton County*, 335 F.3d 1326, 1329 (11th Cir. 2003) (en banc).

"In limited circumstances, a local government's decision not to train certain employees . . . to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). To prevail on a Section 1983 claim based on this basis, a plaintiff must establish that the "municipality inadequately trains or supervises its employees, this failure to train or supervise is a city policy, and that city policy causes the employees to violate a citizen's constitutional rights." *Gold*, 151 F.3d at 1350. The policy may be proven by showing that the failure to train evinced a "deliberate indifference" to the rights of a municipality's citizens, *id.*, and a "pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate" such a deliberate indifference, *Connick*, 563 U.S. at 62 (quoting *Brown*, 520 U.S. at 409). Picardat has provided no relevant evidence to establish that the City has a policy of failing to train its officers, and he has provided no evidence of a pattern of similar constitutional violations by untrained employees.[9] As a result, he cannot establish the City's Section 1983 liability based on policy.

---

[9] Picardat does cite a July 9, 2013, letter from the U.S. Department of Justice, which he argues "found reasonable cause to believe that the [City of Miami Police Department] engaged in a pattern of excessive force with respect to firearm discharges." Pl.'s Opp'n at 30. He also advances arguments based on a purported review of various public records. However, none of these documents are attached to his opposition, and so the Court lends no credence to his unsupported argument. That notwithstanding, a March 10, 2016, agreement between the Department of Justice and the City of Miami states that the Department of Justice "affirmatively acknowledges that the findings letter dated on or about July 9, 2013, was not meant to satisfy the requirements of Sec 803(8) of either the Federal Rules of Evidence or the Florida Evidence Code for admission by non-parties to this Agreement in a State or Federal Court" and provides that the Agreement "shall not be construed as an admission or evidence of liability under any federal, State, or municipal law including 42 U.S.C. § 1983. Nor is the City's entry into this Agreement an admission by the City, [the Police Department], or its officers and employees that they have engaged in any unconstitutional, illegal, or otherwise improper activities or conduct." [ECF No. 84-2 at 2].

Because Picardat has not shown that the City has an officially adopted policy of permitting any particular constitutional violation, he must show both that the City has a custom or practice of permitting the constitutional violation and that the City's custom or practice is "the moving force [behind] the constitutional violation." *Grech*, 335 F.3d at 1330 (citation and internal quotation marks omitted). "To prove Section 1983 liability based on custom, a plaintiff must establish a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a custom or usage with the force of law.'" *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)) (internal quotation marks omitted). Picardat has provided no evidence to establish the existence of any such widespread practice—only mere allegations, which the Court need not accept. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Thus, the Court finds he has failed to establish Section 1983 liability based on custom. Accordingly, summary judgment as to Count VIII must be granted in favor of the City.

## IV.   CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED** that the Defendants' Motion for Final Summary Judgment [ECF No. 76] is **GRANTED**. Pursuant to Federal Rule of Civil Procedure 58, final judgment will be entered separately.

**IT IS FURTHER ORDERED** that the Complaint [ECF No. 1] is **DISMISSED WITHOUT PREJUDICE** as to Defendant Robin Sparks.

This action is **CLOSED** and all other pending motions are **DENIED AS MOOT**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 5th day of April, 2017.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE